52   151
77   628

52   151
79   601

52   151
89   434

R. W. CAMPBELL v. L. D. ELLIOTT ET AL.

1. HOMESTEAD—CONSTITUTIONAL LAW.—Under section 22 of article 8 of the Constitution of 1845, forced sales of the homestead were so absolutely prohibited as to render them invalid and ineffectual, in and of themselves, without further act of the parties, to convey any legal right.

2. HOMESTEAD—FORCED SALE—SUBROGATION.—B and his wife C occupied a rural homestead from 1851 to 1861, when the wife died. B continued to occupy it as a homestead, with his grandchildren, until his death, in 1869. In 1858, B executed a mortgage on this homestead, (in which his wife did not join,) to secure a debt due E. On foreclosure, E purchased the homestead at sheriff's sale, in 1861, before C's death. D became the purchaser of E's interest in the homestead at bankrupt sale in 1869. In 1873, the heirs of B and C brought trespass to try title against D to recover the land. D prayed, in the alternative, that, if his title should not be good, he be subrogated to the rights of E to the amount of his bid at the foreclosure sale : *Held*—

1. The sale by the sheriff to E, being a forced sale of the homestead, not made to satisfy an incumbrance for purchase-money or

other lien existing before the homestead right attached, did not vest in the purchaser a title to the homestead.

2. The vendee of E was not entitled to be subrogated to the rights of E to the extent of his bid at the foreclosure sale.

3. *Quere:* Whether, if the land had ceased to be a homestead, it might still be subjected to the satisfaction of the mortgage in a new proceeding, if the mortgage were not barred by limitation?

3. DISTINGUISHED.—This case distinguished from Stewart *v.* Mackey, 16 Tex., 56; Brewer *v.* Wall, 23 Tex., 385, and Cross *v.* Evarts, 28 Tex., 523.

4. HOMESTEAD. — Under the present Constitution, no mortgage, trust deed, or other lien on the homestead can be valid except for purchase-money, whether executed by the husband, or by the husband and wife jointly; and every pretended sale of the homestead involving any condition of defeasance is void.

APPEAL from Bowie. Tried below before the Hon. John H. Rogers.

Suit in trespass to try title to three hundred and twenty acres of land was brought by Samuel D. Elliott *et al.*, appellees in this court, against appellant, Robert W. Campbell.

The material facts, as shown by the record, are, that in 1851 Lorenzo C. Elliott and his wife, Martha Elliott, came to the State of Texas, and soon afterwards settled upon the land in controversy; that they lived upon the land as their homestead until some time in June, 1861, when Mrs. Elliott died; that the surviving husband continued to reside upon it as his homestead to the date of his death, in 1869, at which time he had one or more of his grandchildren residing with him; that the plaintiffs are the heirs at law of said Lorenzo and Martha Campbell, and as such claim the land, and brought this suit, there having been no administration on the estate of the deceased parents.

The defendant Campbell claimed the land by the following chain of title:

1. Judgment by default rendered by the District Court of Bowie county, Texas, in favor of James C. Moore, against Lorenzo C. Elliott, of date September 17, 1858, for $2,154.06, and foreclosure of mortgage on this and other property given

to secure that indebtedness. The wife, Martha Elliott, was not a party to the mortgage or the suit of foreclosure.

2. Order of sale issued on the judgment February 8, 1861; levy made March 29, 1861; sale first Tuesday in May, 1861, at which James C. Moore, the plaintiff in that suit, purchased this and other property for $570; and deed by the sheriff to ·him, June 24, 1861.

Mrs. Elliott died in June.

3. The adjudication in bankruptcy of James C. Moore, and deed of assignment by Douglass Reaves, register in bankruptcy, to N. J. Moore, as assignee, &c., June 20, 1868.

4. Order of sale and sale by N. J. Moore, as such assignee, to defendant Campbell, May 20, 1869.

The defendant Campbell prayed to be quieted in his title, and that in the event the same should not be good, then to be subrogated to the rights of James C. Moore to the amount of his bid at the foreclosure sale.

The court charged the jury to the effect that if, at the date of this sale to James C. Moore, two hundred acres of the land in controversy was the homestead of Lorenzo C. and Martha Elliott, the sale conveyed no title thereto to the purchaser; and if the plaintiffs were their heirs at law, and any of them were living on this land at the date of that sale, and were constituent members of the family, then they would find for the plaintiffs; and further, that the jury would disregard the plea in which defendant sought to be subrogated to the rights of James C. Moore.

The defendant asked special charges; one to the effect that if the jury should find that the land was embraced in the judgment foreclosing the mortgage, they would find for defendant.

It appears from the charge of the court that the plaintiffs on the trial below did not in fact claim the excess of one hundred and twenty acres over the homestead.

Verdict was rendered for plaintiffs below, Elliott et al., for two hundred acres homestead, and judgment rendered accordingly, from which this appeal was taken.

*W. M. Campbell,* for appellant.

I. If acts of Elliott were all unlawful, parties and their privies receiving benefit must return all they receive before they can ask relief. (Hunt *v.* Turner, 9 Tex., 386.) But they say the judgment is irregular and erroneous. Admit it, and then the plaintiffs must bring into court all of the mortgage-money before they can recover. (Collins *v.* Riggs, 14 Wall., 491; 15 Tex., 479; 9 Tex., 385; 8 Tex., 409; Story's Eq. Jur., 696.)

Admit that the sale is not only erroneous, but absolutely void: they cannot set it aside till they refund the money paid by the purchaser, (Andrews *v.* Richardson, 21 Tex., 296,) and until money is actually delivered into court, irregularities cannot be noticed. (Howard *v.* North, 5 Tex., 290; Morton *v.* Welborn, 21 Tex., 773; Dufour *v.* Camfranc, 11 Mart., (La.,) 610; 7 Mart., (La.,) 615; 8 Dana, 183; 3 Dana, 623.) But it is contended that these rules are not applicable where a homestead is involved. We refer again to Tadlock *v.* Eccles, 20 Tex., 791, and other authorities. The case of Stone *v.* Darnell, 25 Tex. Supp., 430, was an execution sale of a homestead, and there the court said, Wheeler, J., delivering the opinion: "When the defendant recovered back the land, the right of the plaintiff to have refunded the money he had paid, and which had been applied to the satisfaction of the execution, was perfect. (Townsend *v.* Smith, 20 Tex., 465.)" But again we are answered, that these rules and principles might be applicable if James C. Moore, our vendor, and the purchaser at the foreclosure sale, was the defendant herein; but we submit, from the authorities, that an irregular or void judicial sale, made at the instance of the mortgagee, passes to the purchaser all the rights of the mortgagee, and the purchaser having paid the mortgage debt, is subrogated to all the rights of the mortgagee. (Brobst *v.* Brock, 10 Wall., 519–534; Gilbert *v.* Cooley, Walker's Chan., (Mich.,) 494; Jackson *v.* Bowen, 7 Cow., 13.) In the case of Brobst *v.* Brock the United States Supreme Court said: "An irregular or void judicial sale, made at the instance of the mortgagee, carries all the rights the mortga-

gee, as such, had." In this case, there being no service on the mortgagee, the judgment was held to be void as to him, and therefore it did not cut off his equity of redemption, nor did the sale. Had the judgment been authorized by the service, but erroneously entered, then it would have been valid until reversed or set aside, and a sale under it would have carried the full title of both the mortgagor and mortgagee; but being made at the instance of the mortgagee, and purporting to be a sale of the land, and carrying the whole interest covered by his mortgage, the mortgagee is estopped to deny that all of his rights passed by the sale, and the purchaser having paid the mortgage debt, is subrogated to the mortgagee's rights. A purchaser at a sheriff's or judicial sale takes by the purchase all the right, title, and interest that the defendant had in and to the land. (Cooper *v.* Galbraith, 3 Wash., 546.) If the title is equitable, the purchaser takes the same; (Smith *v.* McCann, 24 How., 398;) and covenants for title are real, and pass with the estate. (4 Greenl. on Real Prop., p. 381.) Hence, admitting this judgment and sale to be valid as against the mortgagee, the purchaser at the said foreclosure sale took all the rights of the mortgagee, only leaving, by virtue of the nullity of the judgment and sale, to the mortgagor, the right of redemption; and this appellant being a purchaser at a judicial sale of all the right, title, and interest of the said James C. Moore in and to this land, did he not take all his rights in and to the land? And if J. C. Moore took by his purchase, and was subrogated to all the rights of the mortgagee, then is not the purchaser from James C. Moore, under this judicial sale, taking all the rights of the said J. C. Moore, subrogated to all the rights of the mortgagee?

II. It is a recognized rule of law, that the judgment of courts of general jurisdiction, when the court had jurisdiction of the person and subject-matter, though erroneous, must stand until reversed upon appeal or error. (Kempe *v.* Kennedy, 5 Cr., 173; *ex-parte* Watkins, 3 Pet., 193; Biggs *v.* Blue, 5 M. L., 148.) Then the question, Had the District Court of Bowie

county jurisdiction when the judgment of foreclosure was rendered in the case of Moore *v.* Elliott, condemning said land? It is not denied that there was regular service had upon Elliott. Then had the court jurisdiction to determine the question of homestead *vel non?* I cannot suppose that the appellees will contend that the court had not this jurisdiction. Then if the court had jurisdiction of the subject-matter and of the person, its judgment, though erroneous, cannot be attacked in a collateral proceeding. But the court below, in his first charge, says: "If you believe from the evidence that the land in controversy was the homestead of L. C. and Martha Elliott, then said sale and sheriff's deed conveyed no title." Why? Does the peculiar sacredness of the homestead right vitiate or vacate or annul the sanctity and obligation and validity of a solemn adjudication of a court of competent jurisdiction? This question is not *res integra.* It is no new question.

In Lee *v.* Kingsbury, 13 Tex., 71, where the appellant, a purchaser at a mortgage sale, brought action of trespass to try title, and the defendant, the appellee in this action, sought to set up his homestead exemption, the court says, Wheeler, J., delivering the opinion: "It is immaterial, therefore, that the lot in question may have been the homestead at the time of the execution of the mortgage. That it was not at the time of the foreclosure, was conclusively established, as respects the matters in controversy in this suit, by the judgment itself; and hence the answer setting up that plea was rightly stricken out, and evidence to that effect excluded." Again, in Tadlock *v.* Eccles, 20 Tex., 790, Justice Wheeler delivering the opinion, in a much stronger case than the one at bar, uses still stronger language, and says that it can make no difference what may have been the subject-matter of the judgment, if the court had jurisdiction of the subject-matter and the parties, its decision is conclusive, and there is nothing in the homestead right to exempt it from the general rule. He says: "There are other rights secured by the Constitution equally as sacred and inviolable. The right of personal liberty and the right of personal

security are not less so, yet these and every other right which is secured by the Constitution and laws may be divested by the judgment of a court of competent jurisdiction."

In that case the children were setting up the homestead rights as against the purchaser at the mortgage sale, and the court says that "the parent has the right to dispose of the homestead without consulting them. Their domicil follows that of the parent," but says if the wife were here she would not be concluded. But I am answered that I give to these an improper construction. If so, our Supreme Court misunderstood them in the case of Chilson *v.* Reeves, 29 Tex., 281. The court says: "The defense [of homestead], if true in fact, should have been made in the former case. This is well settled upon general principles, and by repeated adjudications of this court," and refers to Tadlock *v.* Eccles and Lee *v.* Kingsbury, above cited. The same questions came up in the Supreme Court of the United States in a case appealed from Illinois, where the homestead act is very similar to ours, in the case of Miller *v.* Sherry, where it was held that a *bona-fide* purchaser under a sale made under the judgment of foreclosure would take the title, and could not be questioned in a collateral proceeding upon the plea that the property was a homestead. (Miller *v.* Sherry, 2 Wall., 273.) And the same ruling is made in Iowa upon a mortgage foreclosure. (Haynes *v.* Meek, 14 Iowa, 320.) But they may say that these errors, if errors, were not specifically assigned. In reply to this objection, if made, I refer to Coburn *v.* Poe, 40 Tex., 410, and Beazley *v.* Denson, 40 Tex., 416.

[No briefs for appellee are found.]

BONNER, ASSOCIATE JUSTICE.—Under the view we take of the material issue presented by the record in this case, it does not become necessary to decide fully that vexed question, What is the homestead estate? Neither does it become necessary to decide what would be the rights of a mortgagee, or one claiming under him under a mortgage of the homestead,

when the same were sought to be enforced by sale made after the property had ceased to be the homestead.

This case differs from that of Stewart v. Mackey, 16 Tex., 56, in this: that here the mortgage was made by the husband alone after the homestead rights had attached, and was foreclosed without the wife being made a party, and a forced sale under judicial process made when the property was still the actual homestead of the husband and wife;—there, the mortgage on the homestead was executed by both husband and wife, and the same was sought to be foreclosed after the property had ceased to be the homestead, and after a new one had been acquired.

It also differs from the cases of Brewer v. Wall, 23 Tex., 585; Cross v. Everts, 28 Tex., 523, and other cases by which it is held that a contract made by the husband alone to convey the homestead is not void, but that damages may be recovered for its breach.

These decisions are based upon the ground, not that a specific performance of the contract could be enforced, but that, by the consent or death of the wife, or otherwise, the homestead rights might cease to exist, after which the contract could be lawfully performed.

Under the particular phraseology of the Constitutions and statutes of several of the States of the Union, in which it is provided that, to make a valid conveyance of the homestead, the wife must join in the deed, it has been decided in many cases that a conveyance by the husband alone is void, not only as to the wife, but as to him also, and that neither would be estopped from asserting the homestead rights against the alience. (Thomp. on H. and E., sec. 474, citing Dye v. Mann, 10 Mich., 291; Amphlett v. Hibbard, 29 Mich., 298; Alley v. Bay, 9 Iowa, 509; Larson v. Reynolds, 13 Iowa, 579; Richards v. Chace, 2 Gray, 385; Morris v. Ward, 5 Kan., 239; Ayres v. Brobasco, 14 Kan., 190; Kennedy v. Stacey, 57 Tenn., (Bax.,) 220; Hoge v. Hollister, 2 Tenn. Ch., 606; Williams v. Starr, 5 Wis., 534, 550; Hait v. Houle, 19 Wis., 472; Revalk v.

Kraemer, 8 Cal., 66; Barber v. Babel, 36 Cal., 11; Sears v. Dixon, 33 Cal., 326.)

The same principle is also broadly announced in the case of Rogers v. Renshaw, 37 Tex., 625; but as the facts of that case are not fully stated, and as the wife herself was there suing for the homestead, it is not quoted with approval or disapproval. There are other decisions of this court which hold, that, under certain circumstances, voluntary sales of the homestead, made by the husband alone, are not void absolutely, but voidable only; as, where the wife, with the husband, abandoned the old homestead after the sale, and left the State or acquired a new one.

In accord with the doctrine that the husband alone should not have the power to incumber the homestead, and as showing the tendency of our legislation on this question, our present Constitution provides that * * * "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase-money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void." (Const. of 1875, art. 16, sec. 50.)

This is based upon the theory that the husband, there being also a living wife, does not alone represent the homestead rights of the family. According to Mr. Freeman, the homestead estate is more analogous to an estate by entirety than that of joint tenancy, they having alike the four unities of interest, title, time, and possession, while the estate, by entirety, has the fifth unity of person; that this, unlike an estate by joint tenancy, can be vested in but two natural persons only, who are regarded as but one in law; who are seized not of an undivided moiety of the whole, but each takes an entirety, and are seized per tout, but not per my; who cannot alienate separately, but must alienate jointly; who cannot sever at pleasure, but hold an estate which, while it remains theirs, is insev-

erable; who cannot have partition unless in a divorce proceeding severing their matrimonial relations, and who have not the right of survivorship, but upon the decease of either spouse the other continues to hold the entire homestead estate as such. (Freem. on Coten. and Part., secs. 49, 64, 86.)

The Constitution in force at the date of the mortgage and sale under consideration provided that  *  *  *  "The homestead of a family  *  *  *  shall not be subject to forced sale for any debts hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the Legislature may hereafter point out." (Const. of 1845, art. 7, sec. 22.)

We are of opinion that it was intended by this language to so absolutely prohibit forced sales of the homestead as to render them invalid and ineffectual, in and of themselves, without further act of the parties, to convey any legal right. (Sampson *v.* Williamson, 6 Tex., 102.)

In this view, the sale under consideration being a forced sale of the homestead, and not to satisfy an incumbrance for the purchase-money, or one otherwise created prior to the time when the homestead right attached, did not vest in the purchaser the title to the homestead, or to his vendee the right to be subrogated to his bid at the foreclosure sale.

We, however, as before indicated, do not express any opinion as to the rights of the parties claiming under the mortgage, nor whether, if their claim is not barred by limitation, they may not still be enforced by a new proceeding against the property, if the same has ceased to be the homestead. This is a question not free from serious difficulty, and is not necessarily involved in this case.

Judgment affirmed.

AFFIRMED.