## SAMMONS v. DAVIE. (No. 8166.)

Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1929.

Rehearing Denied April 10, 1929.

W. T. Carlton, of Harlingen, for appellant.
Neal A. Brown, of Edinburg, for appellee.

FLY, C. J. Appellant, for himself and as trustee for F. M. Hardin and wife, and J. C. Sammons, instituted suit against appellee to recover judgment on a promissory note for $1,000, which recited that it was given as part of the purchase money for a parcel of land known as lot 17 in block 81 in the town of Hargill, Texas. It was also alleged that the Sammons Lumber Company, composed of J. C. Sammons and Hardin and wife, had sold lumber to appellee to the amount of $33.30. It was sought to foreclose a vendor's lien on the land for the amount of the promissory note, interest, and attorney's fees. Appellee answered, setting up homestead rights in the lot, and alleging that the deed which reserved the lien, as well as the note, was executed as a subterfuge in an attempt to render the homestead liable for the pre-existing debt, that appellee bought the lot in question from one E. S. Sandusky, and by an agreement the lot, instead of being conveyed to appellee, was conveyed to appellant, and by him conveyed to appellee by deed reciting that a lien had been retained for the purchase money, as evidenced by a certain promissory note. In truth, appellee had fully paid Sandusky all the purchase money due on the land. When the note for $1,000 was given, appellee had moved on the land and made it his homestead. He acknowledged the justice of the debt evidenced by the note. Mrs. Myrtle Davie intervened in the suit, and set up her homestead right in the property. The cause was submitted to a jury on two special issues, and on the answers the court rendered a judgment for appellant for the amount of the debt sued for, but denied the lien and vested the title in the land to appellee.

The jury found that the note upon which the suit was based did not represent, and was not given for, a part of the purchase money due on the land, and that prior to the time the note was executed appellee had taken possession of the land and placed improvements thereon, manifesting an intention to make the premises the homestead of himself and family. The testimony amply shows that the property had been purchased and paid for by appellee, that by arrangement with appellant the deed, instead of being made directly to appellee, was made to appellant, in order that he might convey it to appellee and reserve a lien on the land to secure a debt of $1,000 that appellee owed appellant. The $1,000 note did not represent any purchase money on the land, because the purchase money had been fully paid to the party who conveyed to appellant. The transaction was a ruse to make a homestead liable for a debt not any part of the purchase money. The note was executed August 13, 1926, and prior to that date, on July 15, 1926, at a time when all the purchase money for the lot had been paid appellee moved on the lot and established his home there. Appellant knew that the homestead had been fixed on the land when the pretended deed was given and the note executed. Appellee told him that he had a wife and child, that he owned no other real estate, and intended to make his home on the lot. He was living on the lot when the deed was executed to him by appellant, and was engaged in business on it also.

On July 1, 1926, when appellee laid out and took other steps to improve the lot, he had paid for it, and the company holding the title was ready to convey title to him. He had a written contract for the land with Sandusky, and, having paid all the purchase money on or before July, 1926, was entitled to a deed under the terms of the contract. The land was his, and he could have compelled the execution of a deed to himself. Instead, he moved on the lot, purchased lumber, and began improving the lot for a home. In order to pay for the materials used in his home, a scheme was evolved by appellant to have the deed made to appellant, then a deed to appellee retaining a vendor's lien, which was in reality a lien to secure payment for the materials furnished by appellant. It was clearly a scheme devised to evade the Constitution and laws in regard to homestead, and an attempt to fix a lien on a homestead.

Mere intention will not dedicate a homestead; but intention is essential, and when that intention is evidenced by bona fide preparations to improve a parcel of land, coupled with its occupation, the safeguards of Constitution and law are thrown about it, and it becomes a home for the family. The facts in this case tending to designate a homestead are stronger and more cogent than in the case of Cameron & Co. v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832. The lot had not been occupied in that case, but material had been bought and preparations had been made for improvements of the lot, which Gebhard and wife intended to use for a home. The court said: "Intention alone cannot give a homestead right; but it is at the same time equally true that all other things combined cannot give it, without the intention to dedicate it to the uses of a home. Valuable and costly improvements, coupled with long-continued possession, without the existence of a bona fide intention to make it a home, will not make it such. But

the placing upon the premises unhewn logs, for the purpose of erecting thereon the humblest cabin, with a bona fide intention to occupy as soon as the cabin can be built, secures the right."

There was no purchase money due on the land, and there could be no forced sale for the purchase money, and there had been no contract for material in writing with the consent of the wife, given in the same manner as is required in making a sale and conveyance of the homestead. No lien could be created in any other manner, and a pretended sale involving any condition of defeasance was null and void. Const. Tex. art. 16, § 50; Campbell v. Elliott, 52 Tex. 151; Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37.

The testimony shows a clear attempt to place a lien on a homestead in violation of the Constitution, and the court properly held the instruments directed toward such violation of homestead rights null and void.

The judgment will be affirmed.