**HUNT et al. v. CASS COUNTY.**

No. 1664.

Court of Civil Appeals of Texas. Eastland.

April 30, 1937.

Rehearing Denied June 18, 1937.

Bartlett & Patman, of Linden, for appellants.

B. F. Whitworth, of Linden, and Carney & Carney, of Atlanta, for appellee.

LESLIE, Chief Justice.

The plaintiff, Cass County, sued W. H. Hunt, Charlie Hunt, Henry Hunt, and Albert Hunt, to recover on four promissory vendor's lien notes and to foreclose the lien securing the same on a 160 acres of land described in a deed from their father, Jack Hunt, and wife, to defendants. The defendants pleaded lack of consideration, nondelivery of deed, notice to plaintiff prior to purchase of notes, etc.

Jack Hunt was granted leave to intervene and he sought to have said deed and notes canceled, alleging that the 160 acres of land on which the foreclosure was sought was at the date of execution of said deed and notes, and for about 40 years prior thereto, the homestead of himself and family, and that the whole transaction as between himself and wife on the one hand, and his sons and the Citizens State Bank of Linden, Tex., on the other, was a simulated transaction, namely, an attempt to mortgage his homestead, and not an outright sale of same. That the conveyance and execution of the notes were made at the suggestion of S. L. Henderson, the then cashier of said bank, and L. L. Harper, the then county judge of Cass County, and was for the purpose of enabling said Jack Hunt (a negro over 80 years of age) to transfer said notes to the bank as security for a debt Jack Hunt owed the bank and the bank in turn to transfer the notes and lien to plaintiff, Cass County, on an obligation the former owed the latter. The notes were immediately transferred to the bank by Jack Hunt and wife, together with all right, title, and interest they had in the land by virtue of the lien. A short time thereafter the bank in like manner transferred the notes, lien, etc., to Cass County which was endeavoring to protect itself against a loss by reason of the financial condition of the bank which appears to have been at that time the county depository and owing the county about $42,000.

Jack Hunt further alleged that the plaintiff, Cass County, through its said county judge, had full knowledge of the nature of said transaction or pretended sale and the purpose thereof.

The plaintiff denied the allegations of the intervener and the defendants, pleading innocent purchaser and estoppel.

■ The above statement is made to reflect more clearly the reason for the disposition we are required to make of this appeal. It is undisputed that at the date of the execution of the deed and notes, the 160 acres of land was and long had been the homestead of Jack Hunt and family. Although a necessary party to this litigation, Jack Hunt's wife is not made a party to the suit. Discussing the effect of a decree of foreclosure of a lien under a similar situation, the court held in Odum v. Menafee, 11 Tex.Civ.App. 119, 33 S.W. 129, 131: "That the decree, in so far as it foreclosed that mortgage, did not have the effect to conclusively establish a lien upon the property; and a sale under it was ineffectual to pass title to the homestead, because the wife was not a party to those proceedings. Campbell v. Elliott, 52 Tex. 151; Thompson v. Jones, 60 Tex. 94; Id., 77 Tex. [626] 627, 14 S.W. 222; Jergens v. Schiele, 61 Tex. 255; Freeman v. Hamblin, 1 Tex.Civ.App. 157, 21 S.W. 1019; Mexia v. Lewis, 3 Tex. Civ.App. 113 [118], 21 S.W. 1016."

In Jergens v. Schiele, 61 Tex. 255, it is held that the wife is a necessary party in such suit, and it is there said: "If there was any defense that could have been urged growing out of her homestead rights which would have defeated the action, then she was a necessary defendant in the cause."

The general rule of law is stated in Law of Marital Rights (Speer) p. 640, § 522, in this language: "In all actions in anyway affecting the wife's homestead interest, in order to bind her she must be made a party defendant. She has rights in the homestead that no other person can assert for her, and upon which, when called in question, she is entitled to a hearing. In all actions, whether of foreclosure or otherwise, affecting the homestead, if it be desired to conclude the wife by the judgment, she should be made a party defendant; that is to say, if there can possibly be any defense growing out of her homestead rights which she may urge, that

would in anyway defeat the action she must be made a party."

If there is any merit in the proposition that the deed executed by Jack Hunt and wife was a pretended sale of their homestead, and Cass County had notice thereof, then the wife is clearly a necessary party to this litigation, and it is the duty of this court to take notice of her absence. 3 Tex.Jur. § 120; Butman v. Jones (Tex. Civ.App.) 24 S.W.(2d) 796. The record before us brings the instant case within the general rule and excludes the application of any of the exceptions thereto. Such being the case, it is the duty of this court to reverse the judgment of the trial court for the reasons assigned, and remand the same to the trial court that all necessary parties may be brought into the suit. It is so ordered.

### On Rehearing.

The appellee's motion for rehearing has been carefully considered, but we are still of the opinion that the proper disposition of the appeal was made by our original opinion. The motion states: "Appellee seriously urges that the wife of Jack Hunt if she had been a party to the law suit is estopped as a matter of law, under the facts in this case, to deny the validity of the deed from Jack Hunt and wife to Will Hunt et al. and of the notes from Will Hunt et al. to Jack Hunt and is estopped to assert that the transaction was anything other than a bona fide sale of the land in controversy to Will Hunt et al."

In support of the contention we are cited to National Bond & Mortgage Corp. v. Davis (Tex.Com.App.) 60 S.W.(2d) 429, First Texas Joint Stock Land Bank v. Chapman et ux. (Tex.Civ.App.) 48 S.W. (2d) 651, and Sanger v. Calloway et ux. (Tex.Com.App.) 61 S.W.(2d) 988. The opinion in each of these cases merely upholds the right of an innocent purchaser. Either the undisputed testimony established such right or proper findings by the court or jury did so. Such is not the record before us. We are dealing with an instructed verdict, and the wife of Jack Hunt not being a party to the suit did not have an opportunity to assert her homestead rights, if any. Upon this issue it would seem that she would be entitled to her day in court in the regular channels of litigation. Further, the evidence on the issue of estoppel, were she a party, is not conclusive.

A re-examination of this record brings us to the conclusion that there are important issues of fact raised by the testimony which should have been submitted to the jury. This is an additonal reason why the judgment of the trial court should be reversed.

To simplify our holding, it will be observed that from the standpoint of the intervener, Jack Hunt, and the defendants, the defenses offered are not predicated on any alleged fraud. They most strenuously urge that the intervener, Jack Hunt, was induced by the bank and the county judge to make a pretended sale of his homestead in violation of the Constitution and statutes forbidding such (Const. art. 16, § 50, note 21, and authorities thereunder), and that the county had notice and knowledge of the nature of the transaction when it subsequently purchased the notes from the bank. These points are all raised by proper assignments in an effort to establish error on the part of the trial court in giving a peremptory instruction in favor of the county.

It is undisputed that on the date of the execution of the notes in suit Jack Hunt owed said bank a sum in the exact amount of said notes. This indebtedness appears to have been secured by a vendor's lien against 80 acres of Jack Hunt's 160-acre homestead. His testimony in the main contradicts the existence of any such lien, but in some phases of it it is equivocal on same. There is no dispute that the other 80 acres of his homestead was wholly unencumbered by this indebtedness. The alleged transaction of March 16 (execution of notes and deed in controversy) resulted in spreading a pre-existing debt to the bank over the entire 160 acres of land upon which Jack Hunt had been residing for many years. The notes, as stated, were immediately transferred to the bank by Jack Hunt and wife. Shortly thereafter (April 4, 1929) the notes and lien were transferred in like manner by the bank to the plaintiff, Cass County, for a consideration of $2,000. This consideration was a payment by the bank on the $42,000 obligation (pre-existing debt) owed the county by the bank and arising under the circumstances detailed in the original opinion. In all these transactions Henderson, the present county judge, the then cashier of said bank, and the nominal plaintiff herein, handled the same for the bank, and L. L. Harper, the then county judge of Cass County and at the time of this trial engaged in the abstract business, etc., represented the county in the purchase of the notes. The bank, then in financial difficulties, was endeavoring to liquidate to the best advantage possible, and Cass County (through its commissioners' court and county judge Harper) was endeavoring to protect itself from any loss of funds by reason of the financial condition of the depository.

The county's case rests upon the testimony of said Henderson and Harper and the instruments incident to the transaction involved. It called no other witnesses. Jack Hunt is alleged to have been an aged and ignorant negro at the time of the transaction in question. The testimony indicates such to be a fact, and that the business ability of the four sons is somewhat in keeping with that of the father.

The testimony of both Harper and Henderson is to the effect that the transaction of March 16, 1929, was a bona fide sale by Jack Hunt of his 160-acre homestead to his four sons and that in consideration for the same they executed to the father the notes in suit. In brief, they state and maintain that the transaction was a sale and not a mortgage.

Since the correctness of an instructed verdict is under attack, this court is required to view the testimony in the light most favorable to the appellants, or the losing parties. This is the gauge or test which must be applied in determining whether or not an issue was raised upon the question of the alleged pretended sale of the homestead and knowledge thereof by the county when it purchased the notes.

The testimony of the Hunts is somewhat incoherent and in parts not easily understood, but a fair analysis of the same reflects that they are testifying in their way that Henderson and Harper arranged for them a plan by which they could better secure the indebtedness to the bank and at the same time prevent the loss of the homestead to the father. Their testimony repels the idea that the transaction was an outright sale. The old negro when asked, "You intended to sell your homestead or make this deed to the boys? A. No sir, not to sell it, I intended to make the deed to the boys.

"Q. Did you intend to still live there? A. Yes sir.

"Q. Since this deed was made have you continued to live there at this place? A. Yes sir.

"Q. Has anybody ever demanded possession of this place from you? A. No sir.

"Q. Did you ever receive any payments on the notes? A. No sir."

At the time of this suit something like six years had elapsed after the notes had been executed. At the term of court prior to this trial a judgment was taken against these negroes without service of citation on them. That was discovered and the judgment was set aside. The defendants were then properly brought into the case.

 Henry Hunt, one of the boys, when asked by appellee's counsel, "You were to buy the place and make the notes to your daddy and he was to transfer them to the bank and in that way pay off the indebtedness—in that way get an extension of time? A. And one of the boys asked him [Henderson] at the time, did that consume the place and he said 'No.' if we paid the notes off at my father's death the place would fall to us.

"Q. And you all agreed to do that? A. We signed the notes."

In the statement that the place "would fall to us" there is a strong implication that the negro boys might ultimately acquire an interest in the land by inheritance. This is repugnant to the idea of the sale then and there made. In the main, this is the tenor of the negroes' testimony. At least four of them are positive that L. L. Harper was the first person who ever approached them and suggested that the old man make the conveyance. Harper and Henderson both admit in their testimony that they were active in advising with the negroes with reference to the transaction. The interest of the bank and the county is obvious and the diligence of Harper and Henderson in promoting the transaction, whatever it was, is apparent. While the appellants' testimony, if not altogether specific in some phases, it is on the whole, we think, entirely sufficient to raise an issue of fact upon whether or not the deed from Jack Hunt to his boys, and the whole transaction incident thereto, was a mortgage of his homestead, and, further, whether or not the county had notice or knowledge of the nature of that transaction when it purchased the notes. For this reason, we think the court erred in instructing the verdict in favor of the plaintiff.

Under the record before us, the judgment cannot be sustained upon the ground that the county was an innocent purchaser of the notes, and, therefore, entitled to protection regardless of the nature of the transaction between the bank, Jack Hunt, and his sons. If by proper pleadings the issue could be said to be in the case, the county apparently did no more than take the notes and credit the amount paid on a debt which the bank already owed the county. This would not be a valuable consideration. McKamey v. Thorp, 61 Tex. 648; Catrett v. J. S. Brown Hardware Co. (Tex.Civ.App.) 86 S.W. 1045; Overstreet v. Manning, 67 Tex. 657, 4 S.W. 248. As noted, the issue of notice is in the case and is material to the contention that the county knew the simulated nature of the transaction when it purchased the notes, as well as the contention that it purchased for value without notice.

Other questions presented by the appeal probably will not occur upon another trial, since the pleadings will doubtless be recast so as to meet the points sought to be raised. That a correct judgment might be reached as to all parties involved, we have reversed the judgment of the trial court in its entirety. The motion for rehearing is overruled.