No. 2509

### Equitable Mortgage Company & S. M. Finley *v.* B. J. Norton et al.

1. Designation of Homestead.—Articles 2343, 2344, 2345 relate to rural homsteads, providing for designating the homestead out of a tract of more than two hundred acres upon which the parties reside.   It can not apply to an urban homestead.   A certificate of privy acknowledg-

ment by a wife to such description of a town lot as homestead not then or at any time occupied as the homestead is not competent evidence for any purpose.

2. Estoppel—Homestead.—Husband and wife residing upon rented property in a village, and her homestead, the separate property of the wife, being temporarily leased, money was loaned to the husband upon certain representations, among others, that no claim was made to the country homestead. The agent of the company making the loan, testifying to having acted upon the representations of the wife, *held* that the question of estoppel should have been submitted to the jury.

3. Estoppel—28 Texas, 416, 730, followed in defining estoppel.

4. Mortgage upon a Homestead.—As by the Constitution (art. 16, sec. 50) all liens upon homesteads are forbidden (save for purchase money and for improvements made thereon) the lien holder can not rely upon the privy acknowledgment to give validity to such mortgage against the wife. Such mortgage can not directly or by its recitals affect the homestead.

Appeal from Kaufman. Tried below before the Hon. Anson Rainey.

This is an appeal from a judgment denying the right to foreclose a mortgage upon fifty acres of land, the separate property of the wife, and which had been the homestead of the family. The mortgage was given to secure a loan of money to the husband. The transactions of the parties leading to the final making and delivery of the mortgage, and relied upon by the parties respectively, are given in the opinion.

*Lawther & Holloway* and *Manion & Huffmaster*, for appellants, cited Rev. Stats., 2343, 2344; Int. & G. N. R'y Co. v. Underwood, 64 Texas, 463; Peregoy v. Kottwitz, 54 Texas, 502; Heidenheimer Bros. v. Stewart, 65 Texas, 321; Hurt v. Cooper, 63 Texas, 362; Stringer v. Swenson, 63 Texas, 13; Armstrong v. Moore, 59 Texas, 646; Jacobs, Bernheim & Co v. Hawkins, 63 Texas, 3; Ruhl v. Kauffman & Runge, 65 Texas, 735; Davis v. Kennedy, 58 Texas, 516; Wiley v. Prince, 21 Texas, 637; Edwards v. Dismukes, 53 Texas, 605; Williams v. Pouns, 48 Texas, 141; Pool v. Chase, 46 Texas, 207; Woolfolk v. Rickets, 48 Texas, 36; Ryan v. Maxey, 43 Texas, 193; Fitzgerald v. Turner, 43 Texas, 87; Slavin v. Wheeler, 61 Texas, 655; Smith v. Uzzell, 56 Texas, 319; Pierce v. Fort, 60 Texas, 464.

*Wood & Charlton*, for appellees, cited Medlenka v. Downing, 59 Texas, 40; Radford & Wood v. Lyon, 65 Texas, 475; Fore-

man v. Meroney, 62 Texas, 723; Jacobs. Bernheim & Co. v. Hawkins, 63 Texas, 1; Cox v. Harvey, Texas Unreported Cases, 275.

WALKER, ASSOCIATE JUSTICE.    May 18, 1888, appellants brought suit against B. J. Norton and his wife Nannie A. Norton on a promissory note for four hundred dollars and the interest coupons, of date September 1, 1886, made by defendants and payable to the Equitable Mortgage Company, and to enforce a trust deed made to secure same, in which S. M. Finley is named as trustee, upon fifty acres of land near the city of Terrell, the separate property of the wife. Default was made in the payment of interest, and by terms of the contract action arose. The trust deed bore date September 2, but the acknowledgment thereto bore date October 4, 1886.

The defendants pleaded general denial, and alleged that the land described in the trust deed was their homestead at the time it was made, and still is. By amended answer the wife pleaded that the several papers held against her were obtained from her by fraud; that at the time of signing the mortgage she was sick—not competent to know or care what she was doing—setting up in detail a history of her illness, etc.

In supplemental petition plaintiff denied the allegations of fraud, and alleged that the money was loaned upon the faith of the representations of the defendants, etc., whereby they were estopped, etc.

The facts in evidence detail transactions from September 1 to October 22, 1886. It was shown that defendants had lived on the fifty acres in controversy from 1883 to January 6, 1886; that they leased the land for a year and moved to the city of Terrell and lived in a rented house. The land was a gift from her father to the wife. Norton, the husband, was a house builder by trade, and moved to get work. He approached J. S. Grinnan, an agent of the Equitable Mortgage Company, on the subject of a loan, spoke of owning a place in the country, wanted to buy a house, being tired of paying rent. Grinnan passed Norton's every day, and knew he was then living in a rented house. Norton and Grinnan had many conversations about the loan, one or two at the door of Norton's while his wife was present in hearing.

The notes and interest coupons bore date September 1, 1886, as did the two trust deeds. September 16. 1886. an application

was presented to Grinnan for a loan, signed by Norton and wife, containing many representations, and among others: "My wife has an interest in the property" (the fifty acres having been described and offered as security) "herein offered as security, which property is her separate property, having been deeded to her by her father, Geo. R. Paschall. This property is not our homestead, nor is it claimed, used, enjoyed or occupied as such; but we have other property which we occupy and claim only as our homestead, and which is fully paid for and free and clear of all incumbrances, said homestead consisting of one acre, situated and described as follows: In the town of Terrell, with house."

This application was not satisfactory to Grinnan; Norton was so informed. Norton testifying "the papers had not been executed because he had not gotten his homestead." In the negotiations, at what time not given, "Mrs. Norton said he (the husband) was bargaining for one. She did not speak of the particular place they were bargaining for." This is testified to by Grinnan. Norton finally bargained with G. W. Harrell for a homestead. A deed was prepared from Harrell and wife to Norton and wife for a house and lot in the town of Terrell, bearing date and acknowledged October 20, 1886. On October 21, one Galbraith, a lawyer and notary public, who obtained the signature of Mrs. Norton to the "application," and who took her acknowledgment to the two mortgages on the same day, at the request of Grinnan and Norton, prepared a designation of the Harrell house and lot as the homestead of Norton and wife. It is signed by them. The witness testifying, "I got it up." This formally in terms designated the property as their homestead under article 2344, Revised Statutes, for rural homesteads.

On same day, October 21, after this designation had been signed, Norton and Harrell went to Ginnan's office, having with them the designation and the deed from Harrell and wife to Norton and wife. This deed was then given to Norton on Grinnan drawing a check in Norton's favor for two hundred and twenty-five dollars, the purchase money, and out of the loan, and Norton endorsing it to Harrell. The deed and the check were delivered at same time. Grinnan testifies, "the paper of designation was returned to me and I then paid him the balance of the money" of the loan, after retaining sufficient to defray expenses and commissions. On October 22,

1886, Norton and wife reconveyed to Harrell for two hundred dollars, Harrell making twenty-five dollars in the transaction. The defendant, Mrs. Norton, testified that she never abandoned her country homestead; never had had any intention to do so; that in September, 1886, she was taken violently sick, bore a child who lived ten days, and who died two hours after she had been signing papers; that her mind was given to her child; that she did not know the purpose of the papers; that she did not know she was giving a mortgage upon her home. She remembered nothing of the Harrell transaction; did not know her husband had bought it; she recognized her signature to the several papers shown her; denied talking with Grinnan, or hearing him and her husband talking about the loan, etc.

Galbraith testified to taking Mrs. Norton's privy acknowledgment to the two mortgages and to the application and designation. He was asked by Grinnan as to the application; by Norton to take her acknowledgment. He also testified to complying with the statute in taking her acknowledgment. The plaintiff Finlay testified in rebuttal that he had taken the loan in good faith, etc., and that he was the agent of the defendant company, and that Grinnan was not. This was directly denied by Grinnan, who also testified that as agent of the company he had received commissions in this loan.

The court submitted to the jury that if they found that defendants had abandoned the land as homestead, to find for the plaintiff against both defendants, and if they found that the place had not been abandoned to find for defendant, Mrs. Norton.

Instructions were asked and refused upon the law of estoppel upon the facts in evidence:

2. "If you believe from the evidence that defendants made a statement in writing and the same was sworn to by them, and that they represented therein that the land in controversy had been abandoned by them as a homestead, and that this was presented to plaintiffs or their agent by defendants, and that defendants made a further and additional statement in writing duly signed by them to the effect that they had abandoned the land in controversy as a homestead, and that defendants presented the same to plaintiffs or their agent for the purpose of procuring money, and that plaintiffs believed said statements to be true and acted on the faith of the same and advanced money to defendants on the strength of said state-

ments and took a lien on the land in controversy, then you are charged that defendants are estopped from claiming the land in controversy as homestead and you will find the same subject to plaintiffs' lien;" and—

4. "If you believe from the evidence that defendants represented to plaintiffs or their agent at or immediately previous to the delivery of the said deeds of trust that they had purchased a house and lot in Terrell as a homestead and that plaintiffs believed said representations to be true and acted on the faith thereof and loaned defendants money as mentioned in plaintiffs' petition, then you are charged that defendants are estopped from claiming the land in controversy as homestead."

In the light of the entire evidence—and particularly in view of the testimony of Finlay that he, as the agent of the defendant company, alone had accepted the security, and upon it had approved the loan in ignorance of the transactions leading to it—we do not think the court had the legal power to withdraw the issue of estoppel from the jury when it appears that the land was not the actual residence of Norton and wife. It can not be ignored, however, that the testimony fails to show an active participation, in the acts relied on as constituting the alleged estoppel, by Mrs. Norton. During much of the time the matter was pending she was sick of a fever, then in childbed, then watching her sick infant until its death—that watch interrupted by the notary sent with papers to be signed and acknowledged by her, mortgaging her home, the gift from her father—she unconscious, she says, and careless of what she signed; ignorant of the temporary acquisition of the new homestead from Harrell; and finally appears the getting up of the designation, itself false in its recitations when obtained, and returned to the agent after the ceremony at his office by which the new homestead was obtained, paid for and designated.

It is difficult to attach the term *fraudulent* to her passive submission to the series of acts dictated and required to perfect the loan for the husband by the agent of the company.

If Finlay alone represented the company it would not be affected by the acts of the others of which he did not have notice, if such acts in their effect were fraudulent. The charges above set forth should have been given, perhaps with an additional clause limiting the inquiry to the acts of the wife. There was no dispute as to the part taken by the husband.

The elements present in an estoppel by conduct are summarized in Bigelow on Estoppel, 484: (1) "There must have been a false representation or concealment of material facts. (2) The representation must have been made with knowledge of the facts. (3) The party to whom it was made must have been ignorant of the matter. (4) It must have been made with the intention that the other party should act upon it. (5) The other party must have been induced to act upon it." These rules are practically recognized by our courts in the decisions upon the subject. (28 Texas, 416, Burleson v. Burleson; Id., 730, Scoby v. Sweatt.)

As the Constitution denounces as invalid all liens upon the homestead save for purchase money or for improvements made thereon, whether created by the husband alone or together with his wife (art. 16, sec. 50), the lien holder can not rely upon such mortgage or trust deed attempting to give a lien. The privy acknowledgment of the wife does not cure the invalidity, if a trust deed for a loan upon the homestead. The estoppel, therefore, must be made out by proof of facts outside the instrument itself. It can not directly or by its recitals bind the homestead.

The third assignment is not well taken. The court submitted no issue upon the regularity of the privy acknowledgment—in effect the charge assumed that it was legal in making the case turn upon the issue, homestead or not.

The sixth and seventh assignments are not sustained by the record. The instructions are faulty in charging upon the weight of evidence and in being argumentative. The practice of enumerating parts of the testimony has been condemned as calling attention to that testimony, thereby giving to it undue prominence and weight.

The exclusion of the notarial certificate attached to the "designation" was proper. The article in the Revised Statutes under which the document purported to be drawn applied to the owner of a rural homestead upon a tract of land in excess of two hundred acres. It provided for the head of the family designating his homestead out of the tract. Besides, the instrument itself was admitted in evidence, and the notary taking the acknowledgment was examined as a witness. No harm could have resulted from its exclusion had it been competent. The sufficiency of the testimony will not be here discussed.

For the error in refusing the charges asked upon the estoppel pleaded, the judgment will be reversed.

*Reversed and remanded.*

Opinion delivered November 9, 1888.