WESTERN MORTG. & INV. CO., Limited, v. BURFORD et ux.

(Circuit Court, N. D. Texas. April 1, 1895.)

No. 202.

1. HOMESTEAD—ESTOPPEL—CONSTITUTION OF TEXAS.

The constitution of Texas provides (article 16, § 50) that no mortgage or other lien on the homestead shall ever be valid, except for purchase money or improvements made thereon, whether created by the husband alone, or with his wife, and all pretended sales of the homestead, involving any condition of defeasance, shall be void. *Held*, that where the possession and use of the home on the land, claimed by a husband and wife as their homestead, is open and obvious, they are not estopped to claim it as such by a declaration in a mortgage of the land, executed and acknowledged by both of them, that such land is not their homestead.

2. SAME—WHAT CONSTITUTES—TEXAS STATUTE.

B. purchased, in 1880, 120 acres of land in Texas, and, at different times afterwards, he purchased other lands adjoining, in his own name, and his wife inherited a large adjoining tract. In 1884, B. built a house on the 120-acre tract, first purchased, and from that time, continuously, he and his wife made their home thereon. All the land of both husband and wife was inclosed and cultivated or used for pasture by them, in one body. In 1888, B. made an affidavit, for the purpose of obtaining a loan on his land, that such land was not his homestead, and executed and filed a designation of part of the tract belonging to his wife, as his homestead. In 1889, B. and his wife executed a mortgage on B.'s land, in which they disclaimed homestead rights in such land. Rev. St. Tex. art. 2336, provides that the homestead of a family, not in a town, shall consist of not more than 200 acres of land, in one or more parcels, provided the same shall be used for the purposes of a home. *Held*, that the homestead of B. and his wife was on the 120-acre tract, first purchased by B., and that such tract was exempt from the lien of the mortgage made by B. and his wife.

This was a suit by the Western Mortgage & Investment Company, Limited, against John W. Burford and Matilda F. Burford, to foreclose a mortgage. The cause was heard on the pleadings and proofs.

W. M. Alexander, for complainant.
A. M. Carter, for respondents.

Before McCORMICK, Circuit Judge, and RECTOR, District Judge.

RECTOR, District Judge.    1. On December 10, 1889, the respondents, John W. Burford and his wife, Matilda F. Burford, borrowed $14,000 from the complainant company, and executed their note therefor of the same date, payable to complainant on the 10th day of December, 1892.    They also at the same time executed three coupon notes to cover the annual interest on the main sum borrowed, at the rate of 10 per centum per annum.    These coupons were in the sum of $1,400 each, and were due, respectively, on December 10, 1890, 1891, and 1892.    To secure the money so borrowed, respondents, on December 10, 1889, executed and delivered to complainant, at the time they received said money, a trust deed on 134 acres of the S. C. Inman survey, on 160 acres of the H. H. Edwards survey, and on 111 acres of the A. Vogt survey.    The sketch here below shows these surveys, indicated by shaded portions, and also the 304 acres of the S. C. Inman survey, which belonged to Mrs. Matilda Burford by inheritance from her father.

In this trust deed there is an averment by respondents, both husband and wife, that the land mortgaged is not their homestead, and that "we have other property which we occupy and claim as such."

### Deed of Trust.

"The State of Texas, County of Tarrant. Know all men by these presents, that we, J. W Burford and wife, Matilda F. Burford, of Fort Worth, in the county of Tarrant and state of Texas, for and in consideration of the sum of five dollars, to us in hand paid by Zeno Carl Ross, of Fort Worth, Tarrant county, in the state of Texas, trustee, the receipt whereof is hereby acknowledged, and in further consideration of the debt and trust hereinafter mentioned, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto the said Zeno Carl Ross, trustee, and to his successor or substitute in this trust, and to his and their assigns, forever, all and singular the following described property, situated, lying, and being in the county of Tarrant and state of Texas, viz.: Being three certain tracts or parcels of land situate, lying, and being about 3 miles S., 34° W., from Fort Worth, and particularly described as follows: First tract: Being the H. H. Edwards survey of 160 acres of land, patented to Jesse Guin, assignee of H. H. Edwards, on August 16th, 1870, by patent No. 238, volume 19, and beginning at the southwest corner of the A. B. Conner 320-acre survey, in the east line of S. C. Inman's survey; thence south, with the Inman survey, 950 varas, to the southeast corner of the said Inman survey; thence east 950 varas, stake in mound; thence north 950 varas, a stake in the south line of A. B. Conner's survey; thence west 950 varas, to the place of beginning. Second tract: Being the Adam Vogt survey of 111 acres of land, patented to J. Hays, E. J. Kennedy, W. A. Wilson, and H. B. Wright, assignees, on January 9th, 1874, by patent No. 525, volume 41, and beginning at the southeast corner of the F. G. Beasley and the northwest corner of the T. B. Taylor 320-acre survey, a pile of rock; thence east, with north line of the T. B. Taylor survey, 825 varas, to rock in said line; thence north 760 varas, to the southeast corner of the H. H. Edwards 160-acre survey, a pile of rock in prairie; thence west 825 varas, with the south line of said Edwards survey, to a rock in the east line of said F. G. Beasley survey; thence south, with the east line of said F. G. Beasley, 760 varas, to the place of beginning. Third tract: Being 134 acres of the S. C. Inman survey of 640 acres, patented to L. J. Edwards, assignee, on May 30th, 1854, by patent No. 230, volume 10, said tract of 134 acres being a part of a 267-acre tract out of said Inman survey not sold by L. J. Edwards, and lying south of the Texas and Pacific Railway, and north of Clear Fork of Trinity river, and being described by metes and bounds as follows: Beginning at the south boundary line of said survey, 250 varas to center of river; thence down said river, with its meanderings, to the southwest corner of a 40-acre tract owned by L. M. Funck; thence north, with said Funck's west line, 266 varas, to right of way of Texas and Pacific Railway; thence south, 63½° west, with said right of way, 890 varas, to the west line of said Inman's survey; thence south, with the west line of said survey, 770 varas, to the place of beginning. To have and to hold the herein described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Zeno Carl Ross, trustee, to his successor or substitute in this trust, and to his and their assigns, forever. And we do hereby bind ourselves, our heirs, executors, and administrators, to warrant and forever defend, all and singular, the said premises, unto the said Zeno Carl Ross, trustee, to his successor or substitute, and to his and their assigns, forever, against every person whomsoever lawfully claiming or to claim the same or any part thereof. This conveyance is intended, however, as a trust for the better securing of four certain promissory notes, given by us, the said J. W. Burford and Matilda F. Burford, the grantors herein, bearing even date herewith, payable in gold coin of the present standard of fineness, if so required by the holder, to the order of the Western Mortgage and Investment Company, Limited, at the office of the Western Securities Co., Fort Worth, Texas (with current rate of exchange on New York), with interest thereon after maturity at the rate of twelve per cent. per annum, until fully paid, and which said notes are substantially as follows: One principal note for fourteen thousand dollars, payable

December 10th, 1892; one interest coupon note for fourteen hundred dollars, payable December 10th, 1890; one interest coupon note for fourteen hundred dollars, payable December 10th, 1891; one interest coupon note for fourteen hundred dollars, payable December 10th, 1892,—with a special agreement in making and delivery thereof: That if any one of the above-mentioned notes remain unpaid for ten days after maturity thereof, or should any breach be made of any of the covenants, or should any tax be imposed on this deed of trust or on the notes secured hereby, by or within the state of Texas, then, at the option of the said the Western Mortgage and Investment Company, Limited, or of the holder of said promissory notes, the whole principal, with interest then accrued, shall at once become due and payable, and the holder may proceed to collect the same by sale under this deed of trust or otherwise, as such holder may elect; and should such holder elect, or should it become necessary to foreclose this deed of trust by suit or proceedings in court, then we agree to pay, as attorney's fees, ten per cent. on the amount so collected.

"And whereas, for the better securing of said notes, with interest due thereon, to the payee or indorsee or other holder thereof, we, the said grantors herein, do hereby covenant with the said the Western Mortgage and Investment Company. Limited, and its assigns, as follows: That the herein-described property is not our homestead, nor claimed, used, or enjoyed by us as such, and that we have other property which we occupy and claim as such, and that the principal note secured by this deed of trust is given partly for and in lieu of a certain note of $6,300.00, and recorded in volume 11, page 302, of records of mortgages and deeds of trust for Tarrant county, Texas; said note of $6,300.00 being now this day paid off for us, and at our special instance and request, by the said company, with the express understanding and agreement that said company is thereby subrogated to all the rights, both legal and equitable, of the payee in and holder of said note so paid off, including all their rights against said land, and under said deed of trust given to secure said note of $6,300.00. That we will pay the said notes and interest thereon as the same become due and payable. That we have a good and perfect title in fee simple to the said lands, and, have the right to convey the same to the said Zeno Carl Ross, trustee. That we will execute, or procure to be executed, such further assurances upon the said land as may be requested from us by the holder of said notes or by said trustee. That the said land is free and clear of all incumbrances. That we will maintain all buildings and improvements in their present condition, and will not do or suffer any waste of the premises. And that we will pay all taxes or assessments levied by or within the state of Texas upon the said premises, and also (should the holder of said notes so desire) upon this deed of trust or the notes thereby secured before the same become delinquent.

"And it is hereby agreed between the parties hereto that the said the Western Mortgage and Investment Company, Limited, or other holder of said notes, may pay all insurance, taxes, or rates that may from time to time fall due and be unpaid in respect of the premises herein described, and this deed of trust, or the notes hereby secured, and charge such payments with interest thereon at the rate of twelve per centum per annum, on the said premises; and in case the said the Western Mortgage and Investment Company, Limited, or any holder of said notes, satisfy any charge on the lands, or make any further advances for insurance, taxes, or otherwise, to, or on account of, the grantors herein, or be put to any expense in defending the title to said premises, the amount paid in respect thereof shall be payable forthwith, with interest thereon at the rate of twelve per centum per annum until paid, and the said the Western Mortgage and Investment Company, Limited, or any holder of said notes, shall be entitled to all the equities of the person to whom such moneys shall have been paid: Now, therefore, if the said promissory notes be well and truly paid, principal and interest, as the same become due and payable, according to the true tenor and effect thereof, and if the said covenants and agreements be faithfully kept and performed, then, and in that event only, this conveyance of said premises shall become null and void, and the property herein described shall become again wholly ours, and these presents shall be released in due form, at our cost; otherwise to continue in full force and effect. But, in case of any failure or default on our part to keep or perform any of the covenants or agreements

herein contained, we, the said grantors, do fully authorize and empower the said Zeno Carl Ross, trustee hereunder, and his successor or substitute in this trust, and it is hereby made his or their special duty, at the request of the said the Western Mortgage and Investment Company, Limited, or other holder of said notes, at any time made after default as aforesaid, to sell the above-described property to the highest bidder for cash in hand, or on credit, at the courthouse door in Tarrant county, Texas, at public outcry, between the hours of 10 o'clock a. m. and 4 o'clock p. m. of the first Tuesday of the month, after giving public notice of the time, place, and terms of said public sale, and of the property to be sold, as is now required in judicial sales under the laws of the state of Texas; said trustee having the privilege to sell such property together, or in lots or parcels such as to him shall seem expedient, and, after said sale as aforesaid to make; execute, and deliver to the purchaser or purchasers thereof, in our names, good and sufficient deed or deeds in law to the property so sold in fee simple, and receive the proceeds, and apply the same in order as follows: First, to the payment of the proper expenses of advertising the sale; second, to the payment of said notes so in failure or default, together with all interest due thereon, and also the taxes, insurance, and other advances as aforesaid, with interest; third, to the payment to said trustee of five per cent. upon the whole amount due and unpaid as a fee for executing the provisions of this trust; and, lastly, to hold the remainder of the moneys, if any, subject to our order. The said the Western Mortgage and Investment Company, Limited, or other holder under it, shall have equal rights with other persons to be a purchaser at such sale, being the highest bidder; and such sale or conveyance shall forever be a perpetual bar against us, and our heirs and assigns, and all other persons claiming under us or them or any of them. And should the said Zeno Carl Ross, trustee, fail or refuse or be disqualified from acting hereunder, the said the Western Mortgage and Investment Company, Limited, or its assigns, shall have full power to appoint a substitute in writing, who shall have the powers which are hereby delegated to the said Zeno Carl Ross, trustee. And we, the said grantors, do hereby absolutely ratify and confirm any and all acts that the said trustee, or his successor or substitute, may lawfully do in the premises: provided, that nothing herein shall authorize such a release of the lien of this deed of trust as shall affect the rights of the said the Western Mortgage and Investment Company, Limited, or its assigns, without the concurrence in writing of the said the Western Mortgage and Investment Company, Limited, or of its assigns in such release. And it is further and lastly specially agreed by the parties that, in any deed or deeds given by any trustee hereunder, any and all statements of facts or other recitals therein made as to the nonpayment of the money secured, or as to the time, place, terms of sale, and property to be sold, having been duly published, or as to any other acts or thing having been duly done by any trustee, shall be taken by any and all courts of law and equity as prima facie evidence that the said statements or recitals do state facts, and are without further question to be accepted.

"Witness our hands this tenth day of December, A. D. 1889.

"J. W. Burford.<br>"Matilda F. Burford.

"The State of Texas, County of Tarrant. Before me, Geo. Massie, a notary public in and for Tarrant county, Texas, on this day personally appeared J. W. Burford, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed.

"Given under my hand and seal of office this 20th day of December, A. D. 1889.                                    Geo. Massie,

"[Seal.]                       A Notary Public, Tarrant County, Tex.

"Form of Wife's Acknowledgment.

"The State of Texas, County of Tarrant. Before me, Geo. Massie, a notary public in and for Tarrant county, Texas, on this day personally appeared Matilda F. Burford, wife of J. W. Burford, known to me to be the person whose name is subscribed to the foregoing instrument. And having been ex-

amined by me privily and apart from her said husband, and having the same fully explained to her, she, the said Matilda F. Burford, acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and considerations therein expressed, and that she did not wish to retract it.

"Given under my hand and seal of office this 20th day of December, A. D. 1889.                                                                          Geo. Massie,

"[Seal.]                                          Notary Public, Tarrant Co., Tex.

"The State of Texas, County of Tarrant. This certifies that the foregoing deed, with its certificate of authentication, was duly recorded by me on the first day of January, A. D. 1890, in Vol. M–15–R, pages 401, 2 & 3, at 9:30 o'clock a. m. Witness my official seal and signature, at my office in Fort Worth, the day and year last above written.                        Jno. P. King,

"Clerk County Court, Tarrant County, Texas.

"[Seal.]                                          By O. J. Hobl, Deputy."

"Real Estate Deed of Trust Note.

"$14,000.00                  Secured by First Deed of Trust.                  No. ——

"Interest Payable Semiannually.

"Real Estate Deed of Trust Coupon Note.

"Fort Worth, Texas, December 10th, 1889.

"On the tenth day of December, 1892, for value received, I promise to pay to the order of The Western Mortgage and Investment Company, Limited, a corporation organized under the laws of England, the principal sum of fourteen thousand dollars, at the office of the Western Securities Company in Fort Worth, Texas, in gold coin of the United States, of the present standard of fineness, if so required, with exchange on New York, and with interest thereon after maturity, and until finally paid, at the rate of twelve per cent. per annum, payable semiannually. Interest on this note at the rate of ten per cent. per annum is payable semiannually, as evidenced by the certain coupon notes bearing even date herewith, and numbered from one to three, inclusive. It is hereby specially agreed that if this note is placed in the hands of an attorney for collection, or if collected by suit, the maker hereof agrees to pay ten per cent. additional on the full amount due, as attorney's fee. This note is secured by deed of trust duly recorded in Tarrant county, state of Texas.                                                              J. W. Burford.

"Matilda F. Burford.

"$1,400.00                          Fort Worth, Texas, December 10th, 1889.

"On the tenth day of December, A. D. 1890, for value received, I promise to pay to the order of the Western Mortgage and Investment Co., Limited, the sum of fourteen hundred dollars, at the office of the Western Securities Co., in Fort Worth, Texas, with exchange on New York, being the interest due that day on my note of even date herewith, for $14,000.00. This coupon bears interest from maturity at the rate of twelve per cent. per annum, payable semiannually, and is secured by deed of trust of even date herewith on real estate, and properly recorded.                                           J. W. Burford.

"No. 1.                                                              Matilda F. Burford.

"$1,400.00                          Fort Worth, Texas, December 10th, 1889.

"On the tenth day of December, A. D. 1891, for value received, I promise to pay to the order of the Western Mortgage and Investment Co., Limited, the sum of fourteen hundred dollars, at the office of the Western Securities Co., in Fort Worth, Texas, with exchange on New York, being the interest due that day on my note of even date herewith, for $14,000.00. This coupon bears interest from maturity at the rate of twelve per cent. per annum, payable semiannually, and is secured by deed of trust of even date herewith on real estate, and properly recorded.                                          J. W. Burford.

"No. 2.                                                              Matilda F. Burford.

"$1,400.00                          Fort Worth, Texas, December 10th, 1889.

"On the tenth day of December, A. D. 1892, for value received, I promise to pay to the order of the Western Mortgage and Investment Co., Limited, the

sum of fourteen hundred dollars, at the office of the Western Securities Co, in Fort Worth, Texas, with exchange on New York, being the interest due that day on my note of even date herewith for $14,000.00. This coupon bears interest from maturity at the rate of twelve per cent. per annum, payable semiannually, and is secured by deed of trust of even date herewith on real estate, and properly recorded.                          J. W. Burford.
"No. 3.                                                    Matilda F. Burford."

On April 18, 1888, John W. Burford had borrowed $6,300 from the Texas Loan Agency of Corsicana, Tex., and had secured it by a mortgage on the same land above described as mortgaged to complainant. Said Burford, on the 13th of April, 1888, had made affidavit before a notary public, with the view of securing this loan of $6,300, that the land to be mortgaged was not "my homestead, nor claimed, used, occupied, or enjoyed by me as such, but I have other property in Tarrant county which I occupy and claim as my homestead, described as follows: I own 304 acres adjoining this land, which I use as my homestead." On the 2d day of May, 1888, John W. Burford designated the 304 acres of the S. C. Inman survey belonging to his wife as his homestead, duly acknowledged the same before a notary public, and said designation was filed for record the day of its date in the office of the county clerk of Tarrant county. The $6,300 loaned John W. Burford by the Texas Loan Agency of Corsicana was paid off by complainant out of the $14,000 sued for in this case, and the deed of trust now sought to be foreclosed contains an express subrogation of complainant to all the rights of the payee, the Texas Loan Agency of Corsicana, of said $6,300 note.

2. Complainant on the 16th day of February, 1892, filed its bill against John W. Burford and his wife, Matilda Burford, asking judgment for its principal debt of $14,000, and for its debt on three coupons of $1,400 each, interest and attorney's fees, and also asking the foreclosure of its mortgage to secure said notes, and to be subrogated to the lien of the $6,300 loan. Charles Rentz and John Page were also made respondents in said bill, but disclaimed, and were dropped from the case. John W. Burford and Matilda Burford, his wife, filed their answer, in which they set up that all of the H. H. Edwards survey of 160 acres, and 40 acres off of the north end of the A. Vogt survey, was their homestead at the date of the execution by them of the trust deed of April 18, 1888, to H. G. Damon, to secure the Texas Loan Agency of Corsicana in the loan of $6,300 and interest, and also on the date of the execution by them on December 10, 1889, of the trust deed to Zeno Carl Ross to secure the complainant in the sum of $14,000 and interest coupons above referred to.

3. The testimony shows that John W. Burford purchased 120 acres of the H. H. Edwards survey in December, 1880; 111 acres of the A. Vogt survey in May, 1883; 134 acres of the S. C. Inman survey in February, 1881; and he purchased, in 1885, the 40 acres of the H. H. Edwards survey which lies immediately east of the 120 acres of said survey above referred to,—all of the above surveys amounting to 405 acres. The testimony shows that respondents were husband and wife, and that Burford built a house and made other improvements on the H. H. Edwards survey near the south line on the 120

acres first bought by him, and settled thereon with his family, and used said place as a home continuously since the year 1884; that the 405 acres mortgaged to complainant were inclosed and used by respondents; that 40 acres out of the northwest corner of the H. H. Edwards survey were inclosed with the 304 acres of the S. C. Inman survey belonging to Mrs. Burford, and were in cultivation; respondents were married in 1874; that they lived on the Edwards survey, and had their home on it since 1884; that at different times they went to Ft. Worth, and lived there for the purpose of educating their children, but such absence from their home was temporary; that they left some of their domestic animals on the place, and sometimes their household furniture, during such absences, and never intended to abandon their home on the H. H. Edwards place, and returned to it at different times; that they were living on the H. H. Edwards place in March, 1886, and remained there until the fall of 1890. The testimony further showed that the larger part of said 304 acres belonging to Mrs. Burford was in cultivation. The evidence was clear that the home was on the H. H. Edwards survey, the 120 acres first bought by Burford; that J. W. Burford was a farmer and stock raiser, and used the 304 acres, his wife's land, and the several tracts which he had purchased, amounting to 405 acres, which, added to that of his wife, made 709 acres in a solid body, in his business, sometimes renting parts of the land, and at other times using it himself.

4. There are two legal questions that arise under the foregoing pleadings and facts that will determine this case: (1) Where was respondents' homestead located at the date of the $6,300 mortgage to the Texas Loan Agency of Corsicana, and at the date of the $14,000 mortgage to complainant? (2) Are respondents estopped from claiming it on the land mortgaged to complainant?

Article 2336 of the Revised Statutes of Texas provides "that the homestead of a family not in a town or city shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon, provided that the same shall be used for the purposes of a home." In Philleo v. Smalley, 23 Tex. 503, Justice Bell says: "A man's homestead must be his place of residence; the place where he lives; the place where he usually sleeps and eats." In Railway Co. v. Winter, 44 Tex. 611, Justice Roberts says: "The object of the constitution was to protect the house and farm, tan yard, mill, gin, or whatever had been used, in connection with the residence, to make a support for the family." "If the land bought is contiguous to that on which the purchaser lives, and the two pieces do not exceed 200 acres, it at once becomes part of the homestead, by virtue of the actual use of the land as a homestead. Not so if it is remote from the home place. Then there must be a user as homestead, and not merely an intention to use it, to make it homestead." Brooks v. Chatham, 57 Tex. 33. "When there are more than 200 acres of land in a rural homestead, the husband may designate the homestead, but he cannot defraud the wife in so doing as to the actual homestead." Freeman v. Hamblin, 1 Tex. Civ. App. 163, 21 S. W. 1019.

We think that the homestead of Burford and wife was on the 120-acre tract out of the H. H. Edwards survey, and that the designation was a fraud upon the homestead rights of the wife, though she joined with the husband in disclaiming homestead as to this land in the trust deed of December 10, 1889. Very likely the respondents had the right to take with the family home and improvements 10, 15, or 20 acres out of the 120-acre H. H. Edwards survey, and then select the balance to make up 200 acres out of the 304-acre S. O. Inman survey adjoining; but they did not pursue that course, and the court, when called upon to designate the homestead of the family, cannot see its way clear to do so, except by setting apart the tract of 120 acres, upon which the homestead or family house stood, and which was in use for homestead purposes, in common with other adjoining lands belonging to respondents.

Are the respondents estopped from claiming their homestead on the H. H. Edwards 120 acres? The constitution of the state of Texas provides that "no mortgage, trust deed or other lien on the homestead shall ever be valid except for the purchase money thereof or improvements made thereon, as hereinbefore provided, whether such mortgage or deed of trust or other lien shall have been created by the husband alone or together with his wife, and all pretended sales of the homestead involving any condition of defeasance shall be void." Const. Tex. art. 16, § 50. "Every person dealing with land must take notice of an actual open and exclusive possession, and where this, concurring with interest in the possession, makes it homestead, the lender stands charged with that fact, it matters not what declarations to the contrary the borrower may make." Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Kempner v. Comer, 73 Tex. 203, 11 S. W. 194. "The privy acknowledgment of the wife does not cure the invalidity of the trust deed for a loan upon the homestead. The estoppel, therefore, must be made out by proof of facts outside the instrument itself. It cannot directly, or by its recitals, bind the homestead." Mortgage Co. v. Norton, 71 Tex. 689, 10 S. W. 301. In Haswell v. Forbes (Tex. Civ. App.) 27 S. W. 568, Justice Rainey says: "If parties own more than one tract, and part of it is not in the actual possession of the owner, and is not used openly and notoriously in connection with his home, for the comfort and convenience of his family, and the mortgagee has no notice of its homestead character, if any, and is not put upon inquiry, then the owner making such representations would be estopped from claiming it as his homestead." The subrogation of complainant to the rights of the Texas Loan Agency of Corsicana does not strengthen or enlarge its claim to the land in controversy, as the same state of facts existed on April 18, 1888, as to the homestead, as existed on December 10, 1889, when the mortgage to complainant in this case was executed. Whenever there is more land than is necessary for the rural homestead used in connection with the home and appurtenant thereto, whether such land adjoins the home place or is separated therefrom, a mortgage of so much of said land as does not trench upon the homestead by the husband, or by the husband and wife, as ownership may require, is within their election, and binding upon them. In such cases the

doctrine of estoppel rarely arises, because seldom needed. The act of dedication of homestead or mortgage out of such lands settles the rights of parties, without going further. But where, in such cases, there have been solemn declarations by the husband and wife that the land so mortgaged is not their homestead, and such declarations are not contradicted by open and notorious use of the land in connection with the home for the comfort and convenience of the family, and have been relied on and acted on by the mortgagee, and were made to induce the mortgage, there would be an estoppel if invoked. Haswell v. Forbes (Tex. Civ. App.) 27 S. W. 567. Again, where the use of the rural homestead by the family as a home, in whole or in part, is not obvious and apparent, and the husband and wife join in a declaration that such whole or part of the home is not their homestead, or any part thereof, but that other lands constitute their home, and such declarations are made to procure a mortgage, and are believed and relied on by the mortgagee, without neglect or other knowledge on his part, and money loaned by him on such whole or part of the homestead, the husband and wife will be estopped. Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301. The doctrine of Loan Co. v. Blalock, 76 Tex. 86, 13 S. W. 12, has taken deep root in this state. Without it the money lender can easily enter the home, and eject the wife and children. We find that the respondents, Burford and wife, were not estopped by their declarations in this case from claiming their actual homestead on which they lived; that their possession and use of the home on this 120 acres was open and obvious. Let judgment be entered for complainant for its debt of $14,000 and interest, and for the three coupon notes, of $1,400 each, and interest, and for attorney's fees and costs. Let its mortgage lien be foreclosed on all the land described in the trust deed except the 120 acres first purchased of the H. H. Edwards survey, upon which the home is situated, and for that 120 acres let a decree be entered for respondents, Burford and wife.