WESTERN MORTG. & INV. CO. v. BURFORD et al.[1]

(Circuit Court of Appeals, Fifth Circuit. December 17, 1895.)

No. 401.

1. ELECTION OF HOMESTEAD.

Defendant and wife owned a tract of farming and pasture land, composed of parts of the E. and the I. surveys. A dwelling on the I. survey was occupied as a homestead by them from 1879 until 1884, with temporary absences in Ft. Worth, and it was never formally abandoned, though after 1884 the family occupied another dwelling, which was on the E. survey. *Held*, that defendant had a right to designate, according

[1] Rehearing denied February 17, 1896.

to the forms prescribed by the state law, the land in the I. survey, on which was the house formerly occupied by him, as the family homestead, and to mortgage the land in the E. survey to secure a loan.

2. SAME—ESTOPPEL—COVENANTS IN MORTGAGE.

Defendant having, according to the legal forms, designated as his homestead the land in the I. survey, upon which there was a dwelling house formerly occupied by him, and having on the faith thereof, procured a loan, secured by a deed of trust on the other survey, he was estopped by lawful covenant from claiming, as against the beneficiary in the deed, the land covered by the deed as a homestead.

3. SAME.

One reciting in a trust deed made to secure a loan that the property is not his homestead, but that other property is occupied and claimed by him as such, and making an affidavit to the same effect at the request of the proposed lender, is equitably estopped from claiming that the land covered by the deed is his homestead, if, at the time of making the deed, he had the right to deal with such land as free of all homestead rights.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

The appellant, as complainant below, instituted this suit against John W. Burford and wife, Matilda F. Burford, on their joint note, payable to the order of complainant, for $14,000, loaned to them by complainant, and interest thereon at 10 per cent. per annum from December 10, 1889, and 10 per cent. attorney's fees. The bill prayed for a judgment for the amount of the note, principal, interest, and attorney's fees, and for a foreclosure of a deed of trust lien executed by respondents Burford and wife, to secure the said loan on 405 acres of land in Tarrant county, Tex. The complainant specially pleaded and relied upon a subrogation clause in said trust deed, which recited the payment by complainant, at the express instance and request of said respondents, of a prior mortgage debt on said 405 acres of land, in favor of the Texas Loan Agency, of $6,300. By way of anticipation of an alleged false and fraudulent plea of homestead by respondents, the complainant averred that, prior to the making of the loans in question, the respondent John W. Burford did, on May 2, 1888, designate in writing, and set apart in due form of law, his homestead, as comprising 304 acres of land out of the S. C. Inman survey, no part of which 304 acres was embraced in the 405 acres described in complainant's trust deed and bill; that said designation was duly recorded as provided by law; and that, at the time respondents owned and occupied about 700 acres of land, of separate surveys, but all contiguous; and that said designation of his homestead was never changed by respondent. The complainant further alleged that the respondent Burford represented in his written application for the loan, and in the trust deed, that no part of the 405 acres tendered as security was any part of his homestead; that the loan was made on the faith of his representations and acts; that, without same, complainant would not have made the said loan, or any part thereof; and that its security will be irredeemably impaired unless its lien be enforced against all of the 405 acres covered by its trust deed. Burford and wife, respondents below, filed a joint answer, admitting the right of the complainant to a personal judgment against John W. Burford, as prayed for, and the validity of the complainant's lien as to 205 acres of the 405 acres described in the trust deed and in the complainant's bill, and that complainant was subrogated to all the rights of the Texas Loan Agency. The respondents denied the liability of Matilda F. Burford or of her separate estate for the debt in question, under allegations that she was a feme covert, and that the money was loaned to her husband. They further denied the validity of the trust deed as affecting 200 acres of the 405 in question, alleging that at the time of the original loan by the Texas Loan Agency, on May 2, 1888, down to the present time, they have continuously occupied, used, and claimed as a homestead 200 acres (specifically described in same) of the 405 acres covered by complainant's trust deed, and that their trust deed was as to the said 200

acres void under the constitution and laws of Texas. They admitted the execution by J. W. Burford of a homestead designation, and attach as an exhibit to their answer a certified copy of same, and they say they can neither affirm nor deny that the same is in form according to law.

The complainant filed a general replication, and, by amendment to its bill, alleged that, at the time the respondent Burford applied to the Texas Loan Agency for the $6,300 loan, he was temporarily living upon the 405 acres described in the trust deed of complainant; that he was there temporarily only for the convenience of his tenants; that the representative of the Texas Loan Agency informed said Burford, and he in turn informed his wife, that the loan could not be secured unless they would actually vacate the land in question, and designate and occupy the adjacent farm belonging to them; whereupon Burford and wife, with knowledge of the terms exacted by the Texas Loan Agency, requiring them to actually vacate said premises, did move from same, with the intention and with the effect of securing said loan on the faith of their acts as aforesaid; whereupon complainant averred that respondents are estopped from asserting a claim of homestead, and are estopped from claiming that they did not remove from same in good faith. The respondents amended their answer by averments that the Texas Loan Agency had knowledge of the actual occupancy by respondents of the 200 acres described in the original answer as the homestead, and that said Texas Loan Agency were not misled or deceived by any acts of respondents.

There were other parties to the cause as respondents besides Burford and wife, but their interests were disposed of as subordinate to complainant's, and no issue or complaint is made as to the decree affecting them. The decree awarded complainant a judgment against John W. Burford for $23,430, with a foreclosure of its deed of trust liens to all of the 405 acres, except 120 acres thereof, particularly described in the decree. 67 Fed. 860. The decree is complained of only in so far as it denied unto complainant a foreclosure of lien as to the 120 acres, specially excepted in the decree.

The evidence shows that John W. Burford and wife were married in 1874, and shortly afterwards occupied as their home 304 acres of land of the S. C. Inman 640-acre survey, in Tarrant county, Tex., which land was inherited by the wife from her father, and constituted her separate estate; that they lived there until 1879, when they removed to Ft. Worth, temporarily, returning to Mrs. Burford's farm in 1882, where they lived until August, 1884, about 200 acres of the 304 being in cultivation. Meantime Burford and wife acquired other tracts of land adjacent to their homestead, being 120 acres of H. H. Edwards survey, and 111 acres of A. Voght survey, and 134 acres of the S. C. Inman survey, and moved on the 120 acres of the Edwards survey in 1884; but, at the time of the removal, the Voght and Edwards tracts and the 134 acres S. C. Inman tract were subject to a trust deed lien, to secure a $2,500 note and interest, which was not discharged until May 2, 1888. After moving onto the Edwards tract, in August, 1884, Burford and wife bought 40 acres more out of the H. H. Edwards survey, in 1885, and moved to Ft. Worth for the winter of 1885 and 1886, returning to the house on H. H. Edwards tract in 1886. On the 13th day of April, 1888, J. W. Burford made application to the Texas Loan Agency for a loan of $6,300, tendering as security the H. H. Edwards 160 acres, the A. Voght 111 acres, and the 134 acres S. C. Inman survey, in which application he disclaimed any homestead interest in either of said tracts, but expressly stated that his homestead consisted of the 304 acres S. C. Inman survey, adjoining the said tracts. At the date of this application, Willis Swearingen, a tenant of Burford's, was occupying the house, and cultivating the land, on the 304-acre tract, and Burford was living in the house on the H. H. Edwards 120-acre tract.

As to the foregoing facts there is no controversy.

J. W. Burford testified, after making application for the loan (the $6,300 loan), viz.: "Lassiter, representative of Texas Loan Agency, came to my house. Lassiter was pleased with the land, but said he did not see how he could let me have the money and me living on the land. I then told him I was anxious to borrow the money, and would get off the land in order to shape a loan. I proposed to him that I would exchange homes with Willis

Swearingen until loan was consummated. He then said it was satisfactory, if I would also designate the 304 acres S. C. Inman survey as my homestead." Mrs. Matilda. F. Burford testified, viz.: "Yes, in May, 1888, Mr. Burford borrowed some money from said company, and I signed the papers. Mr. Lassiter was the party representing the said company. Mr. Burford informed me, at the time he made the application, that Mr. Lassiter did not like to let him have the money on the homestead and place, unless Mr. Burford would move off of the said homestead. We, Mr. Burford and myself, went over to Mr. Swearingen's house, and stayed all night, and Mr. Swearingen and his wife and family, except one daughter, went over to our house, and stayed all night. My daughter stayed over at our house with Mr. Swearingen and his family to attend to the household affairs. That was the move that was made to borrow the money." To cross question, "Is it not a fact that you and your family were not living on May 2, 1888, on the H. H. Edwards survey or any of the land embraced in the trust deed executed by you to complainant, and did you not, on said day, occupy a place by exchange with Willis Swearingen?" Mrs. Burford answered: "It is not a fact. We were living on the place on the 2d of May, 1888. We did occupy a place by exchange with Willis Swearingen on the night of May 1, 1888, before the papers were executed. My daughter remained on the place with the family of Swearingen, and their daughter stayed at their house with us." Swearingen testified that he was the tenant of Burford, and that Burford asked him to exchange places with him; that he wanted to borrow money on his pasture farm; and "that they would not let him have the money unless they vacated the place."

Lassiter testified that he went to Burford's place, and refused the application for loan unless Burford would move from the land tendered as security, and designated his homestead, whereupon Burford stated that he would do so, as he had vacated the 304-acre farm of Mrs. Burford only temporarily anyway, for the convenience of his tenants; and that Burford was to make the move in good faith; and that the loan would not have been made but for the belief on the part of Lassiter that Burford had vacated the place in good faith. Of this, Lassiter required the affidavit of Burford. This affidavit is as follows:

"The State of Texas, County of Tarrant. On this day personally appeared before me, the undersigned authority, J. W. Burford, of Tarrant county, Texas, and known to me to be the person he represents himself to be, who, after being sworn, says upon his oath that he is now living upon and occupying the 304 acres of the S. C. Inman 640-acre survey, located south of Clear Fork of Trinity river, about 4 miles southwest of Ft. Worth, Texas, and claims, occupies, and uses said land as his homestead; that it has been his homestead for 10 or 12 years past; and that he does not use, occupy, or enjoy any of the 405 acres of land this day mortgaged to Texas Loan Agency of Corsicana, Texas, as a homestead, and never at any time claimed any part thereof as his homestead. This affidavit is made in securing a loan of $6,300.00, of this date, from said Texas Loan Agency. This, April 18, 1888.
　　　　　　　　　　　　　　　　　　　"J. W. Burford.

"Sworn to and subscribed before me, at Fort Worth, Texas, this 2nd day of May, 1888.　　　　　　　　　　　　　　　Newton H. Lassiter,
　"[L. S.]　　　　　　　　　　　Notary Public Tarrant County, Texas."

The designation of homestead is as follows:

"Be it remembered that I, J. W. Burford, of the county of Tarrant, state of Texas, in pursuance of the rights vouchsafed me by the laws of the state of Texas, do by these presents dedicate, nominate, set apart, and designate as my homestead the following described property, in Tarrant county, Texas, to wit: All of the S. C. Inman 640-acre survey, located on south side of Clear Fork of Trinity river, about 4 miles southwest of Fort Worth, Texas; there being about 304 acres of said land. This designation is intended to include the whole of said 304 acres, or 200 acres thereof, which immediately surrounds the house thereon. To have and to hold unto myself, my heirs and legal representatives, forever, free and quit from all claims whatsoever;

and I bind myself, my heirs and legal representatives, to occupy, use, and enjoy the above-described premises as contemplated by law to constitute a homestead. In faith whereof, I hereunto sign my name, this 2d day of May, 1888.          · J. W. Burford."

"The State of Texas, County of Tarrant. Before me, Newton H. Lassiter, notary public in and for Tarrant county, Texas, this day personally came J. W. Burford, known to me to be the person who executed the above instrument of writing, and acknowledged to me that he signed the same for the purposes and consideration therein expressed.          Given under my hand and seal of office, this 2nd day of May, 1888.          Newton H. Lassiter.

"[L. S.]          Notary Public Tarrant Co., Texas.

"Filed for record May 2, A. D. 1888, at 12 o'clock m.          Recorded May 4, A. D. 1888, at 1:40 o'clock p. m.          Jno. F. Swayne, County Clerk."

The clause in the trust deed disclaiming homestead interest is "that the herein-described property is not our homestead, nor claimed, used, or enjoyed by us as such, and that we have other property which we occupy and claim as such." Burford testified that a prior incumbrance of $2,800, which existed on the 120 acres H. H. Edwards, 111 acres A. Voght, and 134 acres S. C. Inman surveys, from a time prior to Burford's occupancy of the house on the Edwards survey, was paid off out of the $6,300 loan, as demanded by the Texas Loan Agency. Cass Edwards testified that Mrs. Matilda F. Burford is his sister, and that Burford claimed the 405 acres of land as his place, and claimed the 304 acres of Mrs. Burford as his homestead; that Burford and wife lived on the H. H. Edwards survey in 1889, and have lived in Ft. Worth since 1889.

W. M. Alexander and W. N. Clark, for appellant.

A. M. Carter, for appellee.

Before PARDEE, Circuit Judge, and BOARMAN and SPEER, District Judges.

PARDEE, Circuit Judge (after stating the facts). The constitution of the state of Texas (article 16, § 51) provides:

"The 'homestead' of a family, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, consisting of a lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

Articles 2343 et sequitur of the Revised Statutes of Texas are as follows:

"When the homestead of a family, not being in a town or city, is a part of a larger tract or tracts of land than is exempted from forced sale as such homestead, it shall be lawful for the head of the family to designate and set apart the homestead, not exceeding two hundred acres, to which the family is entitled under the constitution and laws of this state."

"The party desiring so to designate and set apart the homestead shall file for record with the clerk of the county court of the county in which the land or a part thereof may be, an instrument of writing containing a description by metes or bounds, or other sufficient description to identify it, of the homestead so claimed by him, stating the name of the original grantee and the number of acres, and if more than one survey the number of acres in each."

"Where the owner of such a homestead, part of a larger tract, as is described in article 2343, has failed to designate and set apart his homestead,

as provided in the three preceding articles, the excess of such tract or tracts of land over and above the homestead exemption may be partitioned and separated from such homestead and subjected to levy and sale under execution, if otherwise subject, as hereinafter directed."

"The defendant may at any time after his homestead has been designated and set apart in either of the modes pointed out in this chapter, change the boundaries of his said homestead by an instrument executed and recorded in the manner provided for in articles 2344 and 2345, but such change shall not impair the rights of parties acquired prior to such change."

We have been referred to no case in the higher courts of the state of Texas in which the plain, unambiguous language of the foregoing statutes has been explained, limited, or modified. In Barnes v. White, 53 Tex. 630, however, the said statutes were indorsed as calculated to prevent fraud, injustice, and litigation. The undisputed evidence in this case is that Burford and wife were the owners of parts of different surveys, forming one contiguous tract of farming and pasture land, and had thereon, at least, two dwellings (messuages and curtilages), one of which, on the Inman survey, had been occupied as a homestead from 1879 until 1884, with temporary absences of the family in Ft. Worth, and had never been formally abandoned as a homestead, although in later years Burford and his family, when not living in Ft. Worth, and after 1884, occupied the other dwelling, which was on the Edwards survey. Under these circumstances, and under the plain provisions of the law, Burford had a right to designate and set apart, out of the tracts of land owned by himself and his wife, the homestead, not exceeding 200 acres, to which the family was entitled, under the constitution of the state; and when he did so designate and set apart the homestead openly and above board, with the consent of his wife, and without infringing on the rights of others, he had the full right to deal with the balance of the land as free and clear of all homestead rights, and other parties had the right to deal with him in regard to such land as free and clear of the homestead right. This being the case, when we find by the undisputed evidence that, in accordance with the forms prescribed by law, Burford designated the 304 acres of the Inman survey, upon which there was a dwelling house (messuage and curtilage), formerly occupied by him and his family as a homestead, as the homestead of the family, and on the faith thereof made a deed of trust of the other surveys owned by him, to secure a loan from the Texas Loan Agency, and afterwards a loan from the complainant, we are bound to hold that Burford is now estopped by lawful covenant from claiming, as against the complainant, a homestead other than that so as aforesaid designated, to say nothing of an estoppel in equity by and through the recitals in the trust deed, and under the affidavit made by him, and set forth in the record.

We do not find that any of the cases cited in the opinion of the learned judge in the court below militate against this conclusion. We will refer to some of them briefly:

In Philleo v. Smalley, 23 Tex. 503, Mr. Justice Bell says:

"A man's homestead must be his place of residence; the place where he lives; the place where he usually sleeps and eats."

So far as this quotation is concerned, we can only say that, if it is applied to this case, we should be constrained to find, as a general proposition, that Burford's homestead is in the city of Ft. Worth, for there is the place where he has lived more than on his alleged homestead, and is the place where, by his evidence, he now lives.

In Railway Co. v. Winter, 44 Tex. 597, Justice Roberts says:

"The object of the constitution was to protect the house and farm, tan yard, mill, gin, and whatever had been used in connection with the residence and to make a support for the family."

Conceding the correctness of this proposition, we are still compelled to decide which one of Burford's dwelling houses was his homestead, —the one he chose and selected when he wanted to borrow the money from the complainant, or the one he now puts forward as his homestead, when he wants to defeat the complainant in the collection of his loan.

In addition to the above quotations, we note that Justice Roberts in the same opinion also says:

"The question of intention does become important in some points of view, as, for instance, in determining whether or not a person has acquired a homestead at all, as in case of domicile, or whether he has abandoned his homestead, or which one of two houses, where he sometimes resides in each, is his homestead, or which of the two fields that are in use in connection with his rural occupation or calling is to be preferred when both cannot be, and the like. But when a person is the occupant of a large tract of land, with a mansion house surrounded by or contiguous to his farm, which he uses in his calling as a means of support, most of the tract being woodland or prairie, or consisting of a number of tracts, some of which are not used at all, such facts determine substantially and approximately the locality of his homestead, and the locality of portions of the large tract not so used to be not his homestead or part of it, irrespective of his intention at the time. If he should wish to change the locality of his homestead on such large tract by moving his residence to another portion of his tract, or by changing the boundaries substantially different from the locality which the pre-existing facts of ostensible use and enjoyment have fixed for him, he must do it before other persons have acquired a right by valid lien or purchase on such portion of the land as had not been a part of the homestead, and in such manner, by such use or actual designation, as not to permit others to be deceived or entrapped by the obvious appearance of his ostensible situation on his land. His specific intent in making the change, either to defraud others who have rights attached to the land, or to grab from them the most valuable land not previously used for homestead purposes, for his own pecuniary advancement, and that alone, is therefore not the true test in determining the validity of the claim of homestead."

Freeman v. Hamblin, 1 Tex. Civ. App. 163, 21 S. W. 1019, is quoted from as follows:

"Where there are more than 200 acres of land in a rural homestead, the husband may designate the homestead, but he cannot defraud the wife in so doing as to the actual homestead."

This quotation is not applicable to this case, because there is no contention here that the wife was deceived or defrauded by the husband's designation of the homestead; but the case rather shows, and the contention of the appellant is, that the wife of Burford was fully advised in the premises, and consented to the designation as made, going so far as to join in the temporary abandonment of the Edwards

survey as a homestead, in order to deceive the Texas Loan Agency in the very matter of the homestead.

We have examined Loan Agency v. Blalock, 76 Tex. 85, 13 S. W. 12; Mortgage Co. v. Norton, 71 Tex. 689, 10 S. W. 301, and Haswell v. Forbes (Tex. Civ. App.) 27 S. W. 568, which, so far as applicable here, are cases dealing with designations of homesteads by actual, open, and exclusive possession, and find nothing in any of them to conflict with, but much to support, what we understand to be the correct rule in this case.

The decree of the circuit court is reversed, and the cause is remanded, with instructions to enter a decree for the complainant recognizing and enforcing its lien on all the property described in the deed of trust set forth in the bill, and as prayed for.